UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICOLE CONTE,

                              Plaintiff,

v.                                                      1:20-CV-0647 (GTS/CFH)

KINGSTON NH OPERATIONS LLC,

                              Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

SADOWSKI KATZ LLP                             ROBERT W. SADOWSKI, ESQ.
  Counsel for Plaintiff
800 Third Avenue, 28th Floor
New York, NY 10004

OBERMAYER REBMANN MAXWELL                      DOVE BURNS, ESQ.
& HIPPEL, LLP                                  STACEY PITCHER, ESQ.
  Counsel for Defendant
9 East 40th Street, 4th Floor
New York, NY 10016

GLENN T. SUDDABY, Chief United States District Judge

**<u>DECISION and ORDER</u>**

        Currently before the Court, in this *qui tam* action filed by Nicole Conte ("Plaintiff" or the

"Relator") against Kingston NH Operations LLC ("Defendant"), is Defendant's motion to

dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6).

(Dkt. No. 22.)  For the reasons set forth below, Defendant's motion is granted.

**I.     RELEVANT BACKGROUND**

    **A.     Plaintiff's Complaint**

Generally, in her Complaint, Plaintiff asserts seven claims against Defendant: (1) a claim

for presenting false claims for payment under the False Claims Act (the "FCA"), 31 U.S.C. §
3729(a)(1)(A); (2) a claim for the use of false statements under the FCA, 31 U.S.C. §
3729(a)(1)(B); (3) a claim for presenting false claims for payment under the New York False
Claims Act (the "NYFCA"), codified at Finance Law § 189(1)(a); (4) a claim for the use of false
statements under the NYFCA, codified at Finance Law § 189(1)(b); (5) a claim for retaliation in
violation of 31 U.S.C. § 3730(h); (6) a claim for retaliation in violation of New York Finance
Law § 191; and (7) a claim for retaliation in violation of New York Labor Law § 741.  (Dkt. No.
1 [Pl.'s Compl.].)

Generally, in support of these claims, Plaintiff alleges as follows.  Defendant operates
Ten Broeck Center ("TBC") for Rehabilitation and Care in Lake Katrine, New York.  (*Id.* at 2.)
TBC is a for-profit healthcare facility that offers rehabilitation and long-term nursing care.  (*Id.*)
Specifically, TBC provides its residents with nursing and subacute rehabilitative clinical
services, "including post-operative subacute care, 24-hour skilled nursing [care], long-term care,
physical, occupational and speech therapies seven days per week."  (*Id.*)  TBC's residents
include Medicaid and Medicare beneficiaries, which allows for TBC to submit claims seeking
payment to both Medicaid and Medicare.  (*Id.*)

Medicaid is a health care program that provides health insurance to the indigent, blind,
disabled, and indigent families with dependent children.  (*Id.* at 8.)  Medicaid is administered by
the Centers for Medicare and Medicaid ("CMS") at the federal level; at the state level, Medicaid
is administered by a state-specific agency.  (*Id.*)  Under federal law, states can expend funds on
behalf of Medicaid beneficiaries to pay for goods and services, including (a) drugs, (b) hospital
services, (c) physicians' services, and (d) rehabilitation and long-term nursing services.  (*Id.* at 8-
9.)

On June 19, 2019, Plaintiff was hired as a Talent Acquisition and Onboarding Coordinator at TBC.  (*Id.* at 5.)  In this role, Plaintiff was responsible for overseeing the recruitment and hiring process of new nursing employees (including Certified Nursing Assistants, Licensed Practical Nurses, and Registered Nurses), managing the onboarding and development of new nursing staff, and submitting background checks of all new employee hires.[1]  (*Id.*)  During the COVID-19 pandemic, Plaintiff's ordinary responsibilities changed so as to include tasks such as arranging for TBC's nursing staff to be fitted for N95 masks, and updating patients' families by posting pictures and videos of residents (with their consent) to TBC's Facebook website.  (*Id.*)

At some point, Plaintiff informed TBC's administration that the facility should implement basic safety and protective procedures.  (*Id.* at 12.)  In response, TBC's employees were supplied with paper masks, but were not given "meaningful education or training as how to [properly] use them."  (*Id.*)  Initially, TBC's administration instructed Plaintiff to schedule N95 mask-fitting appointments for only TBC's nursing staff, and not for its housekeeping staff, nutrition staff, and other employees who had regular contact with TBC residents.  (*Id.* at 13.)  Before COVID-19 being detected in any of TBC's residents, Plaintiff witnessed TBC staff incorrectly donning their paper masks (i.e., not covering their nose), and notified TBC's Administrator, Katie Perez ("Ms. Perez"), of this noncompliance.[2]  (*Id.* at 14.)  Ms. Perez did not

---

[1]     The Court notes that Plaintiff alleges that she has been employed in the medical field since 2009 and has become knowledgeable in nursing and medical practices and procedures, various laws, and guidelines relating to the healthcare field.  Most notably, Plaintiff alleges that she is familiar with the "administrative regulations [that are] applicable to the healthcare field and how they apply . . . to long term care."  (Dkt. No. 1, at 5.)

[2]     The Court notes that numerous pictures and videos posted to TBC's Facebook account allegedly depicted employees not wearing N95 masks in the proper manner.  (*Id.* at 15.)  Plaintiff allegedly informed Perez of these pictures and videos, to which Ms. Perez allegedly instructed Plaintiff to remove them from TBC's Facebook account.  (*Id.*)

3

act on the information being relayed to her by Plaintiff.[3]  (*Id.*)

On April 24, 2020, the first case of COVID-19 was confirmed at TBC.  (*Id.* at 13.)  Soon after, Plaintiff asked TBC's Director of Nursing, whether all 350 of TBC's employees needed to be fit for N95 masks—to which TBC's Director of Nursing answered in the affirmative.  (*Id.*)  This process required TBC employees be fitted for masks at an off-site location, which often occurred at medical clinics and urgent care centers located throughout the region.  (*Id.*)  As a result, this process proved to be extremely time consuming and tedious.  (*Id.*)  To expedite having all TBC employees be fit for an N95 mask, on numerous occasions Plaintiff requested assistance from TBC's Director of Human Resources, Meaghan Cragan ("Ms. Cragan"), to no avail.  (*Id.* at 13-14.)

At some point, Plaintiff contacted an outside company that was willing to come into the facility and take N95 mask measurements for all TBC employees.  Plaintiff sought Ms. Perez's approval for the on-site mask fitting.  (*Id.* at 14.)  Ms. Perez approved Plaintiff's plan for on-site mask fitting, but instructed Plaintiff to exclude the dietary department employees from the group of employees to be fit for masks.[4]  (*Id.*)

After COVID-19 was detected at TBC, Ms. Perez instructed Plaintiff to obtain approval from her before posting any picture or video to TBC's Facebook account.[5]  (*Id.* at 15.)

---

[3]     Additionally, on numerous occasions, Plaintiff allegedly provided Ms. Perez with pictures of TBC residents and employees not following proper health and safety precautions by failing to wear their masks and not remaining socially distant from each other.  (*Id.* at 21.)

[4]     The Court notes that TBC possessed an abundance of N95 masks, but withheld distributing them to staff for more than a month.  (*Id.* at 15.)  Instead of distributing N95 masks to staff, Ms. Perez kept them in her office and her private residence.  (*Id.*)

[5]     The Court notes that Plaintiff allegedly possesses pictures documenting Defendant's continued failure to ensure proper safety precautions were being taken.  (*Id.* at 16.)  These allegedly include a picture depicting TBC residents sharing amongst themselves an "oversized

Eventually, the family members of TBC residents began to express concern regarding the health and safety protocols and precautions being implemented at the facility. (*Id.* at 16.) Ms. Perez instructed Plaintiff to write private responses to each inquiry informing family members that TBC was taking all necessary precautions to prevent the spread of COVID-19.[6] (*Id.*)

On April 19, 2020, Ms. Perez informed TBC employees that three residents had tested positive for COVID-19. (*Id.* at 17.) After learning that COVID-19 had been detected at TBC, family members of TBC residents began to publicize that fact on various Facebook account pages. (*Id.* at 18.) Nonetheless, Ms. Perez continued to downplay the severity of the situation that was unfolding at TBC. (*Id.*) On April 20, 2020, TBC distributed unfitted N95 to all of its employees. (*Id.* at 17.) That same day, Plaintiff began to work remotely from her home. (*Id.*) By April 24, 2020, thirty (30) TBC residents had tested positive. (*Id.* at 18.)

On April 25, 2020, Ms. Perez requested that Plaintiff begin to work on improving TBC's public relations by providing news sources with pictures and videos that Ms. Perez had approved. (*Id.*) On April 26, 2020, Plaintiff spoke with Ms. Perez through text message. (*Id.*) Their conversation covered topics including masking, posting pictures and videos on TBC's Facebook account, COVID-19 positivity rate among TBC residents, what should have been done to prevent the transmission of COVID-19 within the facility, and the disciplinary action that TBC should impose on its employees who did comply with proper health and safety precautions such as mask-wearing and social distancing. (*Id.*) Ms. Perez denied that anything could have been done to prevent the increased COVID-19 positivity rate among TBC residents, and took

---

lollipop." (*Id.*)

[6]       The Court notes however, that on numerous occasions, TBC employees allegedly failed to follow proper health and safety precautions aimed at preventing the transmission of COVID-19 (i.e., practicing social distancing, wearing masks when in groups and in public areas of the facility). (*Id.*)

offense to Plaintiff discussing it.  (*Id.*)  On April 20, 2020, TBC arranged for a cleaning company

to enter and disinfect the facility for the first time since the COVID-19 pandemic had begun.  (*Id.*

at 22.)

Plaintiff did not work on April 27, 2020 and April 28, 2020, and decided to use sick time.

(*Id.* at 18.)  On April 28, 2020, Ms. Cragan requested that Plaintiff drop-off her work-issued

laptop at TBC, so that other TBC employees could use it.  (*Id.* at 19.)  On April 28, 2020,

Plaintiff wrote a letter to Ms. Perez outlining her concerns, complaints, and failures.[7]  (*Id.* at 20.)

On April 29, 2020, Plaintiff was unable to log onto TBC's server and was also unable access her

email account from her mobile phone.  (*Id.* at 18.)  Ms. Cragan informed Plaintiff that the TBC

server was encountering technical difficulties.  (*Id.*)  On April 30, 2020, Plaintiff learned that a

shared password-protected document had been created that contained a list of TBC employees

who had tested positive for COVID-19.  (*Id.* at 19.)  However, Plaintiff was not given access to

this document.  (*Id.*)  Ms. Cragan informed Plaintiff she was not given access to the document

because it contained confidential information.  (*Id.* at 19-20.)

On May 1, 2020, Plaintiff determined she had been locked out from accessing any TBC

resident information, COVID-19 related information, and TBC's Facebook account.  (*Id.* at 20.)

Upon logging onto the TBC server, Plaintiff discovered that her saved Internet history and

passwords had been erased.  (*Id.*)

At some point, Ms. Cragan instructed Plaintiff to not contact her through text messaging

in the future.  (*Id.*)  Soon after, Plaintiff was able to access the server; however, her access was

limited to information unrelated to COVID-19.  (*Id.*)  As a result of Defendant's failure to

---

[7]      The Court notes that the specific details as to Plaintiff's concerns, complaints, and
failures are unclear because she did not provide or identify them.

provide its employees with proper personal protective equipment ("PPE"), failure to instruct its employees how to use the PPE, and the lack of enforcement of state-issued mask mandates and social distancing, numerous news reports and media outlets publicized the number of COVID-19 cases and deaths among TBC residents.  (*Id.*)

On May 4, 2020, Plaintiff received a letter terminating her employment with Defendant. (*Id.* at 22.)  The letter contained "pretextual false statements," including the following: (a) Plaintiff made disparaging comments about TBC on various social media websites, (b) Plaintiff failed to promote TBC's presence and overall image, (c) Ms. Perez had reached out to Plaintiff on numerous occasions to discuss Plaintiff's concerns regarding TBC's operations, and (d) Plaintiff acted in an unprofessional and disrespectful manner towards her colleagues.  (*Id.*)

Throughout her employment at TBC during the COVID-19 pandemic, Plaintiff retained a collection of text messages that demonstrate her legitimate concern for the health and safety of TBC's employees and residents.  As the text messages indicate, Plaintiff did not gratuitiously criticize Ms. Perez, but rather legitimately asked her what measures were being taken to prevent the transmission of COVID-19 within the facility.  (*Id.* at 19.)

### B.     Relevant Procedural History

On June 10, 2020, Plaintiff filed her Complaint, on behalf of the United States of America, the State of New York, and herself.  (Dkt. No. 1 [Pl.'s Compl.].)  On June 10, 2020, Plaintiff moved *in camera* to seal the *qui tam* action pursuant to 31 U.S.C. § 3730(b).  (Dkt. No. 2.)  On June 11, 2020, U.S. Magistrate Judge Christian F. Hummel granted Plaintiff's motion to seal.  (Dkt. No. 3.)  On May 27, 2021, the United States and the State of New York informed the Court of their declination to intervene in the action.  (Dkt. Nos. 8, 9.)  On June 1, 2021, Magistrate Judge Hummel ordered that the case be unsealed and for Defendant to be served

process.  (Dkt. No. 10.)

### C.     Parties' Briefing on Defendant's Motion to Dismiss

#### 1.     Defendant's Motion to Dismiss[8]

Generally, in support of its motion to dismiss, Defendant makes five arguments.  (Dkt.

No. 22, Attach. 1 [Def.'s Mem. of Law].)  First, Defendant argues that the Court must dismiss

Plaintiff's FCA claim brought pursuant to 31 U.S.C. § 3729(a)(1)(A) and her NYFCA claim

brought pursuant to N.Y. Fin. Law § 189(1)(a), because she has failed to allege facts plausibly

suggesting that Defendant presented a false or fraudulent claim for payment or approval.  (*Id.* at

8-10.)

Second, Defendant argues that the Court must dismiss Plaintiff's FCA claim brought

pursuant to 31 U.S.C. § 3729(a)(1)(B) and her NYFCA claim brought pursuant to N.Y. Fin. Law

189(1)(b), because she has failed to allege facts plausibly suggesting that Defendant made a false

statement to get a false or fraudulent claim paid or approved.  (*Id.*)

Third, Defendant argues that the Court must dismiss Plaintiff's FCA and NYFCA

retaliation claims, because she has failed to allege facts plausibly suggesting that she engaged in

any protected conduct as defined under the FCA or NYFCA.  (*Id.* at 11.)

Fourth, Defendant argues that the Court must dismiss Plaintiff's FCA and NYFCA

retaliation claims, because she has failed to allege facts plausibly suggesting the underlying FCA

and NYFCA claims.  (*Id.*)

Fifth, Defendant argues that the Court must dismiss Plaintiff's N.Y. Labor Law § 741

---

[8]     The Court notes that, in addition to asserting five main arguments, Defendant requests
that the Court take judicial notice of "the dire situation facing the country at that time and the far-
reaching ramifications if [Plaintiff's] claims are able to proceed."  (Dkt. No. 22, Attach. 1, at 4
[Def.'s Mem. of Law].)  The Court will address this request below in Part III.A. of this Decision
and Order.

retaliation claim, because (a) Plaintiff was not an employee covered by the statute, and (b) even assuming Plaintiff was a covered employee, she failed to allege facts plausibly suggesting improper quality of patient care or improper quality of workplace safety. (*Id.* at 12-15.)

### 2.    Plaintiff's Opposition Memorandum of Law[9]

Generally, in support of her opposition memorandum of law, Plaintiff makes five arguments. (Dkt. No. 26 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that the Court must deny Defendant's motion to dismiss, because she has alleged facts plausibly suggesting that Defendant retaliated against her after she engaged in a protected activity of which Defendant had knowledge. (*Id.* at 19-23.)

Second, Plaintiff argues that the Court must deny Defendant's motion to dismiss pertaining to the New York Labor Law retaliation claim, because she meets the definition of an "employee" under N.Y. Labor Law § 741. (*Id.* at 23-25.)

Third, Plaintiff argues that the Court must deny Defendant's motion to dismiss, because she has alleged facts plausibly suggesting that Defendant engaged in practices amounting to "improper quality of patient care" and "improper quality of workplace safety" under N.Y. Labor Law § 741. (*Id.* at 25-26.)

Fourth, Plaintiff argues that the Court must deny Defendant's motion to dismiss, because she has alleged facts, with particularity required under Fed. R. Civ. P. 9(b), plausibly suggesting that Defendant violated the FCA and NYFCA. (*Id.* at 26-29.)

Fifth, Plaintiff argues that the Court must deny Defendant's motion to dismiss because

---

[9]     The Court notes that, in addition to Plaintiff's five main arguments, she requests that the Court take judicial notice of "the health guidance and mandates issued by the NYS DOH to health care providers, including [D]efendant, at the time that the events in the Complaint took place." (Dkt. No. 26, at 12 [Pl.'s Opp'n Mem. of Law].)  The Court will address this request below in Part III.A. of this Decision and Order.

she alleged facts plausibly suggesting that Defendant's conduct constituted material violations of the FCA.  (*Id.* at 29-31.)

### 3.        Defendant's Reply Memorandum of Law

Generally, in support of its reply memorandum of law, Defendant makes four arguments. (Dkt. No. 27 [Def.'s Reply Mem. of Law].)  First, Defendant argues that the Court must dismiss Plaintiff's FCA claims brought pursuant to 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), and her NYFCA claims brought pursuant to N.Y. Fin. Law §§ 189(1)(a) and 189(1)(b), because she has failed to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard.  (Dkt. No. 27, at 4-7 [Def.'s Reply Mem. of Law].)  More specifically, Defendant argues that Plaintiff has failed to identify "who submitted the false claims, the dates of service, dates of [the claims'] submission, the patient for whom the claim was allegedly submitted, how the claim was false, to whom the statement was made, when the statement was made, or any other [relevant] facts . . . ."  (*Id.* at 7.)

Second, Defendant argues that the Court must dismiss Plaintiff's FCA and NYFCA retaliation claims, because, regardless of the arguments set forth within her opposition memorandum of law, Plaintiff nonetheless has failed to allege facts plausibly suggesting that she engaged in a protected activity as required under the FCA and NYFCA.  (*Id.* at 8-10.)

Third, Defendant argues that the Court must dismiss Plaintiff's N.Y. Labor Law § 741 retaliation claim, because her arguments are unpersuasive and unsupported by relevant caselaw. (*Id.* at 10-12.)  More specifically, Defendant argues that Plaintiff was not a covered employee within the meaning of the statute, because she never provided patient care, and instead, merely coordinated the distribution of N95 masks to TBC employees.  (*Id.*)

Fourth, Defendant argues that the Court must dismiss Plaintiff's N.Y. Labor Law § 741 retaliation claim, because Plaintiff failed to allege facts plausibly suggesting that its conduct

amounted to an "improper quality of patient care" under N.Y. Labor Law § 741. (*Id.* at 12.)

More specifically, Defendant argues that Plaintiff failed to allege facts plausibly suggesting that

its actions presented either a "substantial and specific danger to public health or safety or a

significant threat to the health of a specific patient." (*Id.* [quoting N.Y. Labor Law § 741[1][d].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Procedural Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de

novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F.

Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[10]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

---

[10]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

(citations omitted).

Finally, with regard to what documents are considered when a dismissal for failure to state a claim is contemplated, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[11]

---

[11]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

**B.      Procedural Legal Standard Governing a Motion to Dismiss Under Fed. R. Civ. P. 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy Fed. R. Civ. P. 9(b), "a complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (internal quotation marks omitted).

"The purpose of [Fed. R. Civ. P.] 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotation marks omitted).  "We recognize and rigorously enforce these salutary purposes of [Fed. R. Civ. P.] 9(b)."  *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).

Finally, claims brought pursuant to the FCA are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  *U.S. v. Dialysis Clinic, Inc.*, 09-CV-0710, 2011 WL 167246, at *9 (N.D.N.Y. Jan. 19, 2011) (Mordue, C.J.) (citing *Wood v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009).

**C.      Substantive Legal Standard Governing Claims Under the False Claims Act**

"The FCA imposes liability for, among other things, 'knowingly' presenting or causing to be presented, a false or fraudulent claim 'for payment or approval.'"  *U.S. v. Northern Adult Daily Health Care Ctr.*, 205 F. Supp.3d 276, 286 (E.D.N.Y. 2016) (quoting 31 U.S.C. § 3729[a]).  Although the FCA has undergone numerous amendments, "its focus remains on those

15

who present or directly induce the submission of false or fraudulent claims." *Universal Health Servs., Inc. v. U.S.*, 579 U.S. 176, 182 (2016).  Under the FCA, a "claim" includes "direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs." *Universal Health Servs., Inc.*, 579 U.S. at 182.  Pursuant to the *qui tam* provisions of the FCA and NYFCA, a private individual may bring civil action on behalf of the federal or state government, acting as a "relator," for violations of each act.  31 U.S.C. § 3730(b); N.Y. Fin. Law § 190(2).  Should a relator file such an action under either the FCA or NYFCA, the federal or state government may elect to proceed and intervene in the action, or they may decline to do so.  31 U.S.C. § 3730(b)-(c); N.Y. Fin. Law § 190(2)(b).

To establish a claim under 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), a plaintiff must show that the defendant "(1) made a claim, (2) to the [] government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Bishop v. Wells Fargo & Co.*, 823 F.3d 35, 43 (2d Cir. 2016) (quoting *Mikes v. Straus*, 274 F.3d 687, 695) [2d Cir. 2001]), *abrogated on other grounds by Universal Health Servs., Inc.*, 579 U.S. 176 (2016).

The FCA imposes liability on three different types of falsity.  First, the FCA prohibits "factually" false claims—where the party submitting the claim provides the government with "incorrect description of the goods and services provided or a request for reimbursement for goods and services never provided." *United States v. Omnicare, Inc.*, 15-CV-4179, 2021 WL 1063784, at *2 (S.D.N.Y. Mar. 19, 2021) (quoting *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp.3d 242, 260-61 (S.D.N.Y. 2014).

Second, the FCA prohibits "legally" false claims—"where a party submits a claim that

contains a statement averring compliance with a federal statute or regulation when, in fact, the

party was not complaint [sic]." *Omnicare, Inc.*, 2021 WL 1063784, at *2 (citing *United States

ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp.3d 680, 699 [S.D.N.Y. 2018]).

Third, the FCA imposes liability "where a party 'knowingly makes . . . a false record or

statement material to an obligation to pay or transmit money or property to the Government, or

knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or

transmit money or property to the Government.'" *Omnicare, Inc.*, 2021 WL 1063784, at *2

(citing *United States ex rel. Foreman v. AECOM*, 454 F. Supp.3d 254, 268 [S.D.N.Y. 2020]).

**D.    Substantive Legal Standard Governing Claims Under the New York False Claims Act**

The NYFCA "is closely modeled on the federal FCA." *U.S. ex rel. Bilotta v. Novartis

Pharms. Corp.*, 50 F. Supp.3d 497, 509 (S.D.N.Y. 2014). The NYFCA imposes liability for

"knowingly mak[ing] a false statement or knowingly fil[ing] a false record." *People ex rel.

Schneiderman v. Spring Nextel Corp.*, 42 N.E.3d 655, 661 (2015). Therefore, "it is appropriate

to look toward federal law when interpreting the New York act." *State ex rel. Seiden v. Utica

First Ins. Co.*, 943 N.Y.S.2d 36, 39 (2011) (citation omitted); *see Kane ex rel. U.S. v. Healthfirst,

Inc.*, 120 F. Supp.3d 370, 381 (S.D.N.Y. 2015) ("When interpreting the NYFCA, New York

courts rely on federal FCA precedent."); *see also Bilotta*, 50 F. Supp.3d at 509 ("New York

courts rely on federal FCA precedents when interpreting the NYFCA.") (citation omitted).

To establish a claim under N.Y. Fin. Law §§ 189(1)(a) and 189(1)(b), a plaintiff must

show that the defendant "(1) made a claim, (2) to the [] government, (3) that is false or

fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury."

*Bishop*, 823 F.3d at 43 (quoting *Mikes*, 274 F.3d at 695), *abrogated on other grounds by

Universal Health Servs., Inc.*, 579 U.S. 176 (2016).

### E.      Legal Standard Governing a Request to Take Judicial Notice

"On a [Fed. R. Civ. P.] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matters of which the court can take judicial notice for the factual background of the case.'"  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Roberts v. Babkiewicz*, 582 F.3d 418, 419 [2d Cir. 2009]).

Under Fed. R. Evid. 201, "[a] court may judicially notice a fact that is not subject to a reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "More generally, the 'traditional textbook treatment' of [Fed. R. Evid.] 201 has included two categories for judicial notice: 'matters of common knowledge' and 'facts capable of verification.'"  *United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (quoting Fed. R. Evid. 201, advisory committee notes to subdivision [b]). Furthermore, a court "may take judicial notice at any stage of the proceeding."  Fed. R. Evid. 201(d).

"The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  However, "[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under [Fed R. Evid.] 201(b)."  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (citing Fed. R. Evid. 201[b]).

III.    **ANALYSIS**

A.    **Whether the Court Will Take Judicial Notice of the COVID-19 Pandemic and Relevant Health Guidance and Mandates Issued by then-Governor Andrew M. Cuomo and the NYS DOH for the Factual Background of the Case**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 26 [Pl.'s Opp'n

Mem. of Law].)  To those reasons, the Court adds the following analysis.

In her opposition memorandum of law, Plaintiff requests that the Court take judicial

notice of the "health guidance and mandates issued by the NYS DOH to health care providers,

including [D]efendant, at the time that the events in the Complaint took place."  (Dkt. No. 26, at

12.)[12]  The Court takes judicial notice of the contents of then Governor Cuomo's relevant

executive orders and public announcements as "background" evidence.[13]  *See Porrazzo v.*

*Bumble Bee Foods, LLC*, 822 F. Supp.2d 406, 411 (S.D.N.Y. 2011) ("[I]t is well-established that

courts may take judicial notice of publicly available documents on a motion to dismiss."); *see*

*also Jones v. Cuomo*, 20-CV-4898, 2021 WL 2269551, at *1 & n.1 (S.D.N.Y. June 2, 2021)

("When considering a motion made pursuant to [Fed. R. Civ. P.] 12[b][6], the Court may take

judicial notice of 'documents retrieved from official government websites,' or other 'relevant

matters of public record . . . .'") (internal citations omitted).[14]  The Court does the same with

---

[12]    In addition, in her Complaint, Plaintiff provides numerous public announcements made and executive orders issued by then New York State Governor Andrew M. Cuomo ("Governor Cuomo").  (Dkt. No. 26, at 12-14.)

[13]    All of the announcements and executive orders issued by then-Governor Cuomo related to the COVID-19 pandemic are accessible on the website for the Governor of the State of New York, of which the Court takes judicial notice.  *See generally* governor.ny.gov, Executive Orders, https://www.governor.ny.gov/executiveorders (last visited January 12, 2022).

[14]    In order to constitute "background" evidence, the evidence must satisfy two requirements: (1) it does not involve a disputed matter; and (2) it aids understanding of a relevant

respect to public announcements and guidance issued by the NYS DOH.[15]

**B.      Whether Fed. R. Civ. P. 9(b)'s Heightened Pleading Standard Is Applicable to Plaintiff's Claims Brought Pursuant to 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B) and N.Y. Fin. Law §§ 189(1)(a) and 189(1)(b)**

After carefully considering whether Fed. R. Civ. P. 9(b)'s heightened pleading standard should apply to Plaintiff's claims, the Court answers this question in the affirmative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 22, Attach. 1 [Def.'s Mem. of Law]; Dkt. No. 27 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, "[i]t is self-evident that the FCA is anti-fraud statute," and therefore "claims brought under the FCA fall within the express scope of Rule 9(b) of the Federal Rules of Civil Procedure."  *Wood*, 328 F. App'x at 747 (quoting *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 [2d Cir. 1995]); *see Bishop*, 823 F.3d at 43 (quoting same).

As discussed above in Part II.B. of this Decision and Order, pleadings subject to Fed. R. Civ. P. 9(b) must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Ladas*, 824 F.3d at 25.  "Where a complaint fails to specify the time, place, speaker and content of the alleged misrepresentation, it will lack the particulars required by [Fed. R. Civ. P.] 9(b)."  *Dialysis Clinic, Inc.*, 2011 WL 167246, at *9.

---

matter.  *See* Fed. R. Evid. 401, Advisory Committee Notes: 1972 Proposed Rules ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.  Charts, photographs, views of real estate, murder weapons, and many other items of evidence fall into this category.").

[15]      All of the announcements and guidance issued by the New York State Department of Health ("NYS DOH") related to the COVID-19 pandemic are accessible on the website for the NYS DOH, of which the Court takes judicial notice.  *See generally* health.ny.gov, Latest News, https://www.coronavirus.health.ny.gov/latestnews (last visited January 12, 2022).

An important exception to Fed. R. Civ. P. 9(b)'s heightened pleading standard occurs when facts ordinarily required to be plead are within the opposing party's knowledge. *Id.* at 10 (citing *Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 [2d Cir. 1987]).  In instances when a plaintiff is seeking to invoke this exception, "the allegations must be accompanied by a statement of the facts upon which the plaintiff's belief is based." *Id.* However, even if a court were to allow a party to proceed under this exception, a plaintiff "must still allege a factual nexus between the improper conduct and the submission of a false claim to the government." *Id.* (citing *Johnson v. The Univ. of Rochester Med. Ctr.*, 686 F. Supp.2d 259, 266 [W.D.N.Y. 2010]).

Although pleadings subject to Fed. R. Civ. P. 9(b) cannot survive a motion to dismiss when they are based upon information and belief, *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972), they can do so if the complaint "adduces specific facts supporting a strong inference of fraud." *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 08-CV-2516, 2010 WL 1837823, at *5 (S.D.N.Y. Apr. 26, 2010) (citing *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 [2d Cir. 1990]).  Therefore, without any additional factual support, "allegations of violations of federal regulations are insufficient to establish a claim under the FCA if a plaintiff cannot identify, with any particularity, the actual false claims submitted by the defendant." *Dialysis Clinic, Inc.*, 2011 WL 167246, at *10 (citing *Johnson*, 686 F. Supp.2d at 265).

In the context an action brought under the FCA, although Fed. R. Civ. P. 9(b) "does not require that every *qui tam* complaint provide details of actual bills or invoices submitted to the government," a plaintiff must nonetheless allege facts plausibly suggesting a "strong interference that specific claims were indeed submitted and that information about the claims submitted are peculiarly within the opposing party's knowledge." *U.S. ex rel. Chorches for Bankr. Estate of*

*Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 93 (2d Cir. 2017).

Furthermore, district courts within this Circuit routinely require plaintiffs (who are asserting claims under 31 U.S.C. §§ 3729[a][1][A] and 3729[a][1][B]) to plead the submission of a false claim with a high degree of particularity. *Kester*, 23 F. Supp.3d at 257 (collecting cases). Specifically, when bringing an action under the FCA, a plaintiff must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Chapman v. Office of Children & Family Servs. of the State of N.Y.*, 04-CV-1505, 2010 WL 610730, at *4 (N.D.N.Y. Feb. 16, 2010) (internal quotation marks omitted), *aff'd*, 423 F. App'x 104 (2d Cir. 2011) (summary order).

Therefore, the Court will require that Plaintiff plead her claims brought pursuant to 31 U.S.C. §§ 3729(a)(1)(A)-(B) and N.Y. Fin. Law § 189(1)(a)-(b) with a heightened degree of particularity, such that Defendant can reasonably "identify particular false claims for payment that were submitted to the government. *Kester*, 23 F. Supp.3d at 257-58. In doing so, the Court recognizes that this heightened pleading standard serves the purposes of Fed. R. Civ. P. 9(b) by requiring Plaintiff to "(1) identify which of the claims submitted were 'false' and (2) provide factual support (as opposed to mere speculation) for her assertion that claims were actually submitted to a government program (such as Medicare or Medicaid)." *Id.* at 258. In other words, Plaintiff must provide specific details of alleged false claims submitted by Defendant in connection with the first, second, third, and fourth causes of action of her Complaint.

**C.    Whether Plaintiff's Claims Brought Pursuant to 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B) and N.Y. State Fin. Law §§ 189(1)(a) and 189(1)(b) Have Satisfied Fed. R. Civ. P. 9(b)'s Heightened Pleading Standard**

After carefully considering whether Plaintiff's claims brought pursuant to 31 U.S.C §§

3729(a)(1)(A) and 3729(a)(1)(B) and N.Y. Fin. Law §§ 189(1)(a) and 189(1)(b) satisfy Fed. R.

Civ. P. 9(b)'s heightened pleading standard, the Court answers this question in the negative for

the reasons stated in Defendant's memoranda of law.  (Dkt. No. 22, Attach. 1 [Def.'s Mem. of

Law]; Dkt. No. 27 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following

analysis.

Defendant argues that Plaintiff has failed to allege facts plausibly suggesting the

following: (1) that Defendant presented a false or fraudulent claim for payment or approval; and

(2) that Defendant made a false statement to get a false or fraudulent claim paid or approved.

(Dkt. No. 22, Attach. 1, at 8-10 [Def.'s Mem. of Law].)  Specifically, Defendant argues that

Plaintiff has failed to allege facts with particularity that identify circumstances constituting fraud,

and instead relies on mere speculation in bringing her claims.  (*Id.* at 9.)

Although Plaintiff concedes that she did not "assemble the documents, such as Medicaid

claims from [] Defendant," Plaintiff argues that her claims must survive Fed. R. Civ. P. 9(b)'s

heightened pleading standard for two reasons.  (Dkt. No. 26, at 28 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that her allegations fall under the recognized exception to Fed. R. Civ. P.

9(b) because the relevant facts relating to any false claim is peculiarly within Defendant's

knowledge.  (*Id.*)  Second, Plaintiff argues that the following "undeniable facts . . . create more

than a reliable inference that Medicare and Medicaid claims were submitted [by Defendant]": (a)

nursing home residents are generally over the age of 65, thereby making them eligible to become

Medicare beneficiaries; (b) after a nursing home resident's Medicare eligibility terminates, they

become eligible for Medicaid (which reimburses the service provider pursuant to a payment

schedule based on the level of care required by the patient); and (c) TBC has a contract with

Medicaid to provide services to residents who require long term nursing care.  (*Id.*)  Therefore,

according to Plaintiff, "there is no doubt that Defendant submitted claims to Medicaid and Medicare for the services provided to the patients residing" at TBC.  (*Id.*)

As discussed above in Part II.C. of this Decision and Order, under the FCA, a plaintiff may bring an action against a party who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a)(1)(A).  Additionally, a plaintiff may bring an action against a party who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(B).  To state a claim for an offense brought under the FCA, a plaintiff must show that the defendant "(1) made a claim, (2) to the [] government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury."  *Bishop*, 823 F.3d at 43 (quoting *Mikes*, 274 F.3d at 695).

Similarly, under the NYFCA, any person who "knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  N.Y. Fin. Law §§ 189(1)(a) and 189(1)(b).  In being closely modeled after the FCA, a claim brought under the NYFCA can be dismissed for the same reasons as a claim brought under the FCA.  *Dialysis Clinic, Inc.*, 2011 WL 167246, at *21.

At the outset, the Court observes that the factual allegations set forth in Plaintiff's Complaint do not plausibly suggest the type of impermissible behavior that constituted a violation of the FCA or NYFCA.  Although Plaintiff has suggested that Defendant had submitted Medicaid claims relating to long-term nursing care provided to TBC residents, alleging that a defendant submitted Medicaid claims alone is insufficient to state a claim under the FCA and NYFCA.  *See Bishop*, 823 F.3d at 43 (quoting *Mikes*, 274 F.3d at 695) ("[T]o prove [a] false

claim[] under the FCA, the relators 'must show that defendant (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury.'").

As a result, with respect to Plaintiff's claims brought pursuant to 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B) and her claims brought pursuant to N.Y. Fin. Law §§ 189(1)(a) and 189(1)(b), she has failed to allege facts plausibly suggesting false or fraudulent billing practices. Therefore, these claims also fall short of satisfying Fed. R. Civ. P. 9(b)'s heightened pleading standard.

With respect to the claims brought pursuant to 31 U.S.C. § 3729(a)(1)(A) and N.Y. Fin. Law § 189(1)(a), Plaintiff has failed to allege facts plausibly suggesting that Defendant had submitted any Medicaid or Medicare claims that were false or fraudulent in nature, or that Defendant knew of any such false or fraudulently submitted claims. With respect to the claims brought pursuant to 31 U.S.C. § 3729(a)(1)(B) and N.Y. Fin. Law § 189(1)(b), Plaintiff has failed to allege any facts plausibly suggesting that Defendant made any false record or material statement in furtherance of a false or fraudulent claim.

The Court is unpersuaded by Plaintiff's argument that she is entitled to more lenient pleading standard based on the relevant facts (that can show a violation of the FCA or NYFCA) being exclusively within Defendant's knowledge and possession. As district courts have recognized, "in the absence of reliable allegations indicating that particulars of fraudulent claims exist . . . [plaintiffs are] not entitled to receive a 'ticket to the discovery process' in order to meet [Fed R. Civ. P.] 9(b)'s particularity requirement." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 03-CV-0680, 2007 WL 4557773, at *3 (S.D. Ind. Dec. 20, 2007) (quoting *U.S. ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1307 [11th Cir. 2002]). The Second Circuit has

adopted this approach to hold that any relaxed pleading standard "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations . . . [such that] a complaint must adduce specific facts supporting a strong inference of fraud . . . ." *Wexner*, 902 F.2d at 172.

Specifically, while the Court agrees that the relevant facts are likely to be within Defendant's knowledge or possession, not all of them were exclusively so.  The Court notes that Plaintiff was employed by Defendant for approximately eleven months.  (Dkt. No. 1, at 5 [Pl.'s Compl.].) Plaintiff has nonetheless failed to allege facts establishing a factual nexus between improper conduct and the submission of a false claim to the government.  For example, Plaintiff has not alleged facts plausibly suggesting how a particular submitted claim is false or fraudulent. In fact, while Plaintiff's Complaint provides facts to plausibly suggest that Defendant submits claims to Medicaid and Medicare for services it provides to residents, it lacks sufficient facts about the theory of fraud or about the existence of the false or fraudulent billing.  Specifically, the Court finds Plaintiff's Complaint to be lacking the following information: (1) the identity or position of the employee(s) who allegedly submitted fraudulent claims or claims containing false statements; (2) the number of fraudulent claims or claims containing false statements and their respective dollar amounts; and (3) any personal knowledge as to the existence of prior or future fraudulent billing practices.

Although Plaintiff's Complaint provides extensive facts as to how TBC staff and residents defied state-issued mask mandates and social distancing guidelines, Plaintiff merely stated a set of circumstances and asks the Court to connect the dots by assuming that Defendant submitted false claims.  (Dkt. No. 1, at 12-22 [Pl.'s Compl.].)

Plaintiff responds that because her claims allege material violations of the FCA and

NYFCA.  (Dkt. No. 26, at 29-31 [Pl.'s Opp'n Mem. of Law].)  More specifically, Plaintiff argues

that as a condition of payment for any claims Defendant would have submitted to Medicaid or

Medicare, it must have been acting in compliance with all relevant NYS DOH regulations,

including the requirement to provide "PPE and [abide by] protective and prophylactic

procedures."  (Dkt. No. 26, at 28-29 [Pl.'s Opp'n Mem. of Law].)  In liberally construing this

argument, the Court finds that Plaintiff appears to be raising an argument based on the theory of

"implied false certification."

> According to this theory, when a defendant submits a claim, it impliedly
> certifies compliance with all conditions of payment.  But if that claim fails
> to disclose the defendant's violation of a material statutory, regulatory, or
> contractual requirement, so the theory goes, the defendant has made a
> misrepresentation that renders the claim "false or fraudulent" under [31
> U.S.C.] § 3729(a)(1)(A).

*Universal Health Servs., Inc.*, 579 U.S. at 180.

In *Universal Health*, the Supreme Court held that the implied false certification theory

can serve as a basis for liability under the FCA.[16]  *Id.* at 181.  In particular, the court found that

liability under the FCA can attach when the following two conditions are met: (1) "the claim

does not merely request payment, but also makes specific representations about the goods and

services provided;" and (2) "the defendant's failure to disclose noncompliance with material

statutory, regulatory, or contractual requirements makes those representations misleading half-

truths."  *Id.* at 190.

Furthermore, the imposition of liability for "failing to disclose violations of legal

---

[16]     The Court notes that the facts of *Universal Health* are substantially different from those
of this case.  There, the defendant admitted that it had submitted claims to Medicaid stating that
its licensed medical professionals provided medical treatment to the plaintiff; but in actuality, the
plaintiff had been receiving treatment from unlicensed individuals or medical professionals
without proper qualifications.  *Id.* at 183-85.  Additionally, the defendant admitted to submitting
Medicaid claims indicating certain care had been performed, when in fact it had not.  *Id.* at 184.

requirements does not turn upon whether those requirements were expressly designated as conditions of payment," but rather "whether the defendant knowingly violated a requirement that the defendant *knows* is *material* to the Government's payment decision." *Id.* (emphasis added). Notably, "not every undisclosed violation of an express condition of payment automatically triggers liability." *Id.* at 190. In other words, materiality is not assumed merely because a defendant misrepresented its compliance with a statutory, regulatory, or contractual obligation. *Id.* at 191.

Under the FCA, the "materiality standard is demanding . . . [such that the FCA does not serve as] a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 194. Specifically, the FCA defines materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Federal courts assess materiality by looking "'to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation' . . . rather than superficial designations." *United States v. Strock*, 982 F.3d 51, 59 (2d Cir. 2020) (quoting *Universal Health Servs., Inc.*, 579 U.S. at 193). Specifically, "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Universal Health Servs., Inc.,* 579 U.S. at 194. Finally, in instances where a defendant's noncompliance with a particular statute, regulation, or contract is minor or insubstantial, then it should be deemed immaterial. *Id.*

Although Plaintiff has thoroughly provided examples of TBC employees and residents not complying with state-issued regulations, that non-compliance is insubstantial given her failure to plausibly allege facts suggesting that any TBC employee(s) submitted a fraudulent or false claim to Medicaid or Medicare. "Materiality must also 'be pleaded with particularity under

28

[Fed. R. Civ. P.] 9(b).'" *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 109 (2d Cir. 2021) (quoting *Grabcheski v. Am. Int'l Grp., Inc.*, 687 F. App'x 84, 87 [2d Cir. 2017] [summary order]).  Here, that simply has not happened.  Plaintiff has failed to allege any facts that plausibly suggest even a single claim—fraudulent or not—that Defendant had submitted to Medicaid or Medicare.  As a result, the Court cannot assess materiality of any submitted claim because Plaintiff has not given any insight as to what those claims look like.

Simply put, Plaintiff has failed to allege facts plausibly suggesting (let alone with particularity) that Defendant submitted any Medicaid claims for services that were performed by employees, who at the time of performing the service, ignored COVID-19-related precautions.

Finally, Plaintiff has failed to allege facts plausibly suggesting that "the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement."  *Id.* at 195.  In any event, Plaintiff has not provided the Court with any prior instances of Medicaid claims being denied solely because a medical professional failed to abide by state-issued mask mandates or social-distancing guidance.[17]

---

[17]     Certainly, the Court acknowledges the importance of abiding by precautions and best practices to limit the transmission of COVID-19; however, Plaintiff has failed to present any legal authority suggesting that noncompliance with state-issued mask mandates and social-distancing guidance automatically renders subsequent medical treatment to be fraudulent and in violation of the FCA or NYFCA.

**D. Whether Plaintiff's Claims Brought Pursuant to 31 U.S.C. § 3730(h) and N.Y. Fin. Law § 191 Allege Facts Plausibly Suggesting that Defendant Retaliated Against Plaintiff for Engaging in a Protected Activity**[18]

After carefully considering whether Plaintiff's FCA and NYFCA retaliation claims plausibly allege facts suggesting that Defendant retaliated against Plaintiff for engaging in a protected activity, the Court answers this question in the negative for the reasons stated in Defendant's memoranda of law.  (Dkt. No. 22, Attach. 1 [Def.'s Mem. of Law]; Dkt. No. 27 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

As previously stated, Defendant argues that the Court must dismiss Plaintiff's retaliation claims brought pursuant to 31 U.S.C. § 3730(h) and N.Y. Fin. Law § 191, because she has failed to allege facts plausibly suggesting that Defendant retaliated against her for engaging in a protected activity.  (Dkt. No. 22, Attach. 1, at 10-12 [Def.'s Mem. of Law].)  Specifically, Defendant argues that Plaintiff has not alleged that she was engaged in a protected activity, because she had not alleged that she had "been investigating matters that were calculated, or reasonably could have [led] to a viable FCA action."  (Dkt. No. 22, Attach. 1, at 10-11.)

In response, Plaintiff argues that the Court must deny Defendant's motion to dismiss as to the FCA and NYFCA retaliation claims, because she engaged in a protected activity, she put Defendant on notice that she was engaging in a protected activity, and Defendant retaliated against her for that conduct.  (Dkt. No. 26, at 17-23 [Pl.'s Opp'n Mem. of Law].)

---

[18]     The Court notes that the elements to establish a claim for retaliation under 31 U.S.C. § 3730(h) and N.Y. Fin. Law § 191 are generally the same.  New York's anti-retaliation statute "is essentially identical in language and substance to its federal counterpart," *Forkell v. Lott-Assisted Living Corp.*, 10-CV-5765, 2012 WL 1901199, at *14 (S.D.N.Y. May 21, 2012), and "courts interpret [N.Y. Fin. Law § 191] by closely tracking judicial interpretation of [31 U.S.C. § 3730(h)]." *Landfield v. Tamaeres v. Real Estate Holdings, Inc.*, No. 105149/11, 2012 WL 3135052, at *6 (N.Y. Sup. Ct. July 23, 2012); *Monsour v. New York State Off. for People with Developmental Disabilities*, 13-CV-0336, 2014 WL 975604, at *10 (N.D.N.Y. Mar. 12, 2014) (McAvoy, S.J.).

The "anti-retaliation" provision of the FCA, otherwise known as the "whistleblower" provision, was enacted to protect individuals who assist in the discovery and prosecution of fraud schemes against the government who "otherwise would not come forward for fear of termination, harassment, or other forms of retaliation." *Beckles-Canton v. Lutheran Soc. Servs. of N.Y., Inc.*, 20-CV-4379, 2021 WL 3077460, at *3 (S.D.N.Y. July 20, 2021).  The FCA's anti-retaliation provision provides, in relevant part, as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop [one] or more violations of [the FCA].

31 U.S.C. § 3730(h)(1).

Generally, to state a claim for retaliation under the FCA, a plaintiff must allege facts plausibly suggesting that "(1) [s]he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against h[er] because [s]he engaged in the protected activity." *Chorches for Bankr. Estate of Fabula*, 865 F.3d at 95.

In its motion to dismiss, Defendant argues that, if the Court dismisses Plaintiff's underlying FCA and NYFCA claims, then it must also dismiss Plaintiff's FCA and NYFCA retaliation claims.  (Dkt. No. 22, Attach. 1, at 11.)  Specifically, Defendant argues that, because Plaintiff's underlying FCA and NYFCA claims must be dismissed for failing to allege facts with particularity as required under Fed. R. Civ. P. 9(b), Plaintiff has also failed to allege facts with particularity that she engaged in any protected conduct under the FCA or NYFCA.  (*Id.*)  The Court respectfully disagrees with this argument.

31

For Plaintiff to allege she engaged in conduct protected under the statute, she need not prevail on her underlying FCA or NYFCA claims, but simply allege facts plausibly suggesting that she "had been investigating matters that were calculated, or reasonably could have [led], to a viable FCA action."  *U.S. ex rel. Sasaki v. N.Y. Univ. Med. Ctr.*, 05-CV-6163, 2012 WL 220219, at *12 (S.D.N.Y. Jan. 25, 2012); *see Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416 & n.1 (2005) (observing that "a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim" and that many courts have "properly recognized that proving a violation of the [FCA] is not an element of a [retaliation] cause of action."); *see also Hayes v. Dep't of Educ. of New York*, 20 F. Supp.3d 438, 443 (S.D.N.Y. 2014) ("There is no question that if [a] [p]laintiff has properly pleaded a claim for retaliation, she is permitted to do so irrespective of the fate of her [FCA] *qui tam* claim.").

Therefore, the Court will not automatically dismiss Plaintiff's FCA and NYFCA retaliation claims merely because it has dismissed the underlying claims, and it will not require that Plaintiff plead her retaliation claims with particularity.  *See U.S. ex rel. Mooney v. Americare, Inc.*, 06-CV-1806, 2013 WL 1346022, at *8 (E.D.N.Y. Apr. 3, 2013) ("A plaintiff need not plead an FCA retaliation claim with particularity because no showing of fraud is required.").

Courts within this Circuit broadly interpret protected activity to include two types of conduct: "(1) lawful acts done by the employee . . . in furtherance of an action under the FCA, and (2) other efforts to stop one or more violations of the FCA."  *Swanson v. Battery Park City Auth.*, 15-CV-6938, 2016 WL 3198309, at *3 (S.D.N.Y. June 8, 2016) (citations and internal quotation marks omitted).  "Although the types of activities covered are broad, the employee's purpose [for bringing suit] must not be detached from the [FCA] in order for the employee to

receive the FCA's whistle blower protections." *Garcia v. Aspira of New York, Inc.*, 07-CV-5600, 2011 WL 1458155, at *4 (S.D.N.Y. Apr. 13, 2011).

With respect to the first category of protected activity, lawful acts done by the employee that are in furtherance of an FCA action are generally interpreted "as conduct that was calculated to, or reasonably could lead to a viable FCA action." *N.Y. ex rel Khurana v. Spherion Corp.*, 15-CV-6605, 2016 WL 6652735, at *17 (S.D.N.Y. Nov. 10, 2016). Although a plaintiff is not required to be aware that the inquiry he was pursuing could lead to a FCA action, a plaintiff must, however, "show a 'good faith basis,' or [an] 'objectively reasonable basis,' for believing that [] she was investigating matters in support of a viable FCA case." *Swanson*, 2016 WL 3198309, at *3 (quoting *Sasaki*, 2012 WL 220219, at *12).

With respect to the second category of protected activity, "a retaliation claim can be stated so long as the employee was engaged in efforts to stop an FCA violation, even if the employee's actions were not necessarily in furtherance of an FCA claim." *Id.* (quoting *Malanga v. N.Y. Univ. Langone Med. Ctr.*, 14–CV–9681, 2015 WL 7019819, at *2 [S.D.N.Y. Nov. 12, 2015]).

Therefore, courts apply a two-part test—containing an objective and subjective component—to evaluate whether an employee engaged in a protected activity. *Khurana*, 511 F. Supp.3d at 473. "Specifically, to prove that [s]he engaged in a 'protected activity,' an FCA plaintiff must show that '(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.'" *Id.* (citing *Ortiz v. Todres & Co.*, 15-CV-1506, 2019 WL 1207856, at *4 [S.D.N.Y. Mar. 14, 2019]).

Plaintiff argues that her conduct constituted a protected activity, because, at the relevant

time, she believed in good faith that "Defendant's continued failure to provide and enforce the proper use of PPE was a fraudulent act against the government . . . [which was evidenced by] repeatedly br[inging] these failures to the attention of TBC administration . . . ."  (Dkt. No. 26, at 17-18 [Pl.'s Opp'n Mem. of Law].)

On the other hand, Defendant argues that the facts that Plaintiff does allege are too generic to identify what Plaintiff actually asserts should be deemed to be a protected activity. (Dkt. No. 22, Attach. 1, at 11-12.)  Furthermore, Defendant argues that Plaintiff has not alleged facts plausibly suggesting that she made complaint about or investigated possible fraud or the submission of false claims.  (*Id.* at 12.)  Instead, Defendant argues, the most liberal reading of Plaintiff's retaliation claims suggests only that she reported instances relating to the health and safety of TBC's staff and residents, and not any FCA-related inquiry or conduct.  (*Id.*)

In her Complaint, Plaintiff has alleged facts plausibly suggesting her good-faith belief that she was engaged in a protected activity.  On numerous occasions (occurring in-person and through electronic communication), Plaintiff raised her concerns with Ms. Perez and TBC administration regarding TBC staff and residents' generalized lack of compliance with state-issued mask mandates and social distancing guidance.  (Dkt. No. 1, at 3, 13-15, 17 [Pl.'s Compl.].)  Additionally, over time, Plaintiff collected a "catalogue of text messages that demonstrate her legitimate[ly subjective] and well-founded concern for the health and safety of the facility's residents and staff."  (*Id.* at 19.)  Therefore, the Court finds that Plaintiff's subjective good-faith belief satisfies the first prong for alleging that she engaged in a protected activity under the FCA or NYFCA.

However, the same cannot be said with respect to the objective prong for alleging

Plaintiff engaged in a protected activity under the FCA or NYFCA.[19]   As a result of Plaintiff's abstract argument supporting her claims brought pursuant to 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B), and N.Y. Fin. Law §§ 189(1)(a) 189(1)(b), she has failed to allege facts plausibly supporting that a "reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government."  *Khurana*, 511 F. Supp.3d at 473. Specifically, Plaintiff has not provided any factual allegations plausibly suggesting that an employee in a similar circumstance would have gathered that noncompliance with mask mandates could possibly suggest that fraudulent claims or claims containing false statements had been submitted to Medicaid.  Put another way, Plaintiff failed to allege that she had "an objectively reasonable basis for believing that" by raising such concerns and complaints with Ms. Perez and TBC administration, "[s]he was investigating matters that could have led to a viable FCA [or NYFCA] claim."  *Sasaki*, 2012 WL 220219, at *12.

In any event, Plaintiff is not entitled to whistleblower protections (and thus could not have engaged in a protected activity) because the Court finds that Plaintiff's purpose in bringing this suit is detached from those of the FCA or NYFCA.  Courts within this district will ordinarily grant a motion to dismiss "where the plaintiff's complaint does not allege any FCA-related inquiry or conduct."  *Adiram v. Catholic Guardian Servs.*, 13-CV-6235, 2015 WL 5706935, at *5 (E.D.N.Y. Sept. 28, 2015).

The Court finds *Moor-Jankowski v. Bd. of Trs. of N.Y. Univ.*, 96-CV-5997, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998), to be particularly persuasive.  There, the district court found

---

[19]     The Court notes that, although Plaintiff has thoroughly argued her subjective good-faith belief that her conduct (namely setting forth an effort to stop ongoing FCA or NYFCA violations) constituted a protected activity, she has failed to provide any argument or reasoning as to the objective prong of establishing her participation in a protected activity.  (*See generally* Dkt. No. 26, at 17-19 [Pl.'s Opp'n Mem. of Law].)

the plaintiff's complaint alleging FCA claims to be detached from her purpose in bringing the suit. *Adiram*, 2015 WL 5706935, at *5. Specifically, the district court found the plaintiff's complaint which alleged FCA claims (arguing that the defendant's conduct violated the Animal Welfare Act) lacked any well-pleaded allegations to connect the defendant's activities to any financial fraud. Instead, the plaintiff's complaints and concerns regarding the illegal mistreatment of animals were intended to bring the defendant's alleged illegal conduct into compliance with the Animal Welfare Act. *Id.*

Here, the numerous complaints that Plaintiff allegedly raised with Ms. Perez and TBC administration were primarily motivated by her concern for the health and safety of TBC's employees and residents. Although the Court recognizes the seriousness and importance of abiding to best practices to limit the transmission of COVID-19, Plaintiff's well-plead allegations concern only the health and safety of TBC staff and residents, and not a perpetrated fraud scheme against the government. *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1270 (9th Cir. 1996) ("[A] violation of a law or a regulation standing alone is not proof of a false claim.").

The noticeable lack of any facts plausibly suggesting financial fraud occurring at TBC further supports the finding that Plaintiff's FCA and NYFCA retaliation claims are detached from her actual purpose in filing this action. Plaintiff's lone conclusory allegation that Defendant engaged in conduct that "constituted a fraud on the Government for billing for worthless services" (Dkt. No. 1, at 2 [Pl.'s Compl.]) does not, and cannot, support a plausible inference that Defendant had engaged in any conduct "in furtherance of an action under the FCA" or that Plaintiff undertook any other efforts to thwart ongoing violations of the FCA or NYFCA. 31 U.S.C. § 3730(h).

For each of these alternative reasons, the Court finds that Plaintiff has failed to allege

facts plausibly suggesting that Defendant retaliated against her for engaging in a protected

activity under the FCA or NYFCA.

   E.   **Whether Plaintiff's Remaining Claim Brought Pursuant to N.Y. Labor Law § 741 Should Be *Sua Sponte* Dismissed Without Prejudice to Refiling in State Court**

   After carefully considering the matter, the Court answers this question in the affirmative

for the reasons set forth below.

   Where (as is here) a district court has dismissed all claims over which it has original

jurisdiction, the court may decline to exercise supplemental jurisdiction over remaining state law

claims.  28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)

("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its jurisdiction lies in

considerations of judicial economy, convenience and fairness to litigants; if . . . not present a

federal court should hesitate to exercise jurisdiction over state claims."); *Klein & Co. Futures,*

*Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that

where, as here, the federal claims are eliminated in the early stages of litigation, courts should

generally decline to exercise pendent jurisdiction over remaining state law claims."); *Hurley v.*

*Cnty. of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug. 31, 2005); *accord*,

*Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar. 10, 2009) (Suddaby, J.,

adopting Report-Recommendation by Homer, J.).  The decision is a discretionary one, and its

justification "lies in considerations of judicial economy, convenience and fairness to litigants[.]"

*United Mine Workers of Am.*, 383 U.S. at 726; *see also Kolari v. New York-Presbyterian Hosp.*,

455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under §

1367[c][3], it balances the traditional 'values of judicial economy, convenience, fairness, and

comity,' in deciding whether to exercise jurisdiction.") (quoting *Carnegie-Mellon Univ. v.*

*Cahill*, 484 U.S. 343, 350 [1988]); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir.

2004) ("[W]here at least one of the subsection 1367[c] factors is applicable, a district court

should not decline to exercise supplemental jurisdiction unless it also determines that doing so

would not promote the values [of] economy, convenience, fairness, and comity.").

Here, after carefully considering the relevant factors (i.e., economy, convenience,

fairness, and comity), the Court finds that they weigh decidedly in favor of declining to exercise

supplemental jurisdiction over Plaintiff's sole remaining state law claim (i.e., the seventh cause

of action of Plaintiff's Complaint). The Court notes that it may *sua sponte* render this

determination. *See Rothenberg v. Daus*, 08-CV-0567, 2015 WL 1408655, at *11, n.12

(S.D.N.Y. Mar. 27, 2015) ("[P]laintiffs' contention that the court may not decline to exercise

supplemental jurisdiction *sua sponte* contravenes black letter law."); *see also Star Multi Care

Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp.3d 275, 293 (E.D.N.Y. 2014) ("[T]he

Court *sua sponte* declines to exercise supplemental jurisdiction over the remaining [state law]

claims against [defendants].").  As a result, Plaintiff's seventh cause of action is dismissed

without prejudice to refiling in New York State Court within the applicable time period, pursuant

to 28 U.S.C. § 1367(d) and New York State law.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 22) is **<u>GRANTED</u>**; and it is

further

**ORDERED** that the first, second, third, fourth, fifth, and sixth causes of action in

Plaintiff's Complaint (Dkt. No. 1) are **<u>DISMISSED</u>**; and it is further

**ORDERED** that Plaintiff's seventh cause of action (Dkt. No. 1) is **<u>DISMISSED</u> without

prejudice** to refiling in New York State Court within the applicable time period, pursuant to 28

U.S.C. § 1367(d) and New York State law.

Dated: February 7, 2022
          Syracuse, New York


_____
Glenn T. Suddaby
Chief U.S. District Judge